In Proceedings for the Reorganization
of
RANDOLPH–WELLS BUILDING COR-
PORATION, Debtor.

No. 7464.

United States District Court
E. D. Illinois.

Aug. 30, 1961.

———◇———

Sonnenschein, Lautmann, Levinson,
Rieser, Carlin & Nath, Chicago, Ill., Cos-

tello, Wiechert, Roberts & Gundlach, E. St. Louis, Ill., for Randolph-Wells Building Corp.

Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., Walker & Williams, East St. Louis, Ill., for LaSalle Nat. Bank, Chicago, Ill.

JUERGENS, District Judge.

On March 27, 1961, Randolph-Wells Building Corporation (hereinafter referred to as "Randolph-Wells") filed its amended petition asking that bankruptcy proceedings No. 7464 be reopened for the purpose of limiting the time within which bonds of the City State Safe Deposit Company may be exchanged for securities of Randolph-Wells (hereinafter referred to as "1935 Bonds").

Randolph-Wells is the corporate successor to City State Safe Deposit Company, an Illinois corporation (hereinafter referred to as "City State").

City State on February 1, 1927, issued its First Mortgage 6 Per Cent Twenty Year Sinking Fund Gold Bonds (hereinafter referred to as "1927 Bonds") in the aggregate principal amount of $2,359,500. On June 19, 1930, the holders of the 1927 bonds entered into a bondholders' protective agreement whereby such holders were to deposit their bonds with the Chicago Trust Company, as depositary, and to receive certificates of deposit in exchange for their bonds. This action followed default on the 1927 bonds, which occurred prior to June 19, 1930.

On February 6, 1935, a proceeding, entitled "In The Matter of City State Safe Deposit Company, No. 7034", to reorganize City State under the provisions of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was filed in this Court. Pursuant to a plan of reorganization approved on July 8, 1935, in proceeding No. 7034, Randolph-Wells was organized as the corporate successor of City State.

On November 14, 1935, an order in proceeding No. 7034 was entered which provided, inter alia, that the new corporation, Randolph-Wells, upon receiving the conveyance of the debtor's property from the trustees be authorized and directed:

To execute its new mortgage bonds, issuable to the holders of the 1927 bonds in the amount of $2,359,500, to the Trust Company of Chicago for distribution to the holders of the old first mortgage bonds of City State; and in order to secure the bonds, to execute, accept and deliver to the Trust Company of Chicago as trustee, its new indenture of mortgage. That the Trust Company of Chicago, a corporation, be authorized upon receipt of delivery of the 1935 bonds to authenticate the same and to distribute the bonds and voting trust certificates deposited with the Trust Company by the trustees to the holders of the 1927 bonds in the following manner:

(a) New bonds of the corporation to be distributed in the same principal amount as the principal amount of the old first mortgage bonds presented by such holders.

(b) Voting trust certificates evidencing common stock of the new corporation to be distributed in proportion of one share of such stock for each $100 principal amount of the old first mortgage bonds (1927 bonds) presented by the holders; such distribution to be made to the holders upon presentation and surrender by the holders of the debtor's old first mortgage bonds (1927 bonds) accompanied by all unpaid interest coupons appertaining thereto, or upon presentation of certificates of deposit evidencing the deposit of the bonds and coupons under the terms of the Bondholders' Protective Agreement dated July 19, 1930, for the deposit of the bonds.

Pursuant to the above order, Randolph-Wells executed and delivered to the Trust Company of Chicago an indenture of mortgage dated November 1, 1935; executed and delivered to the Trust Company of Chicago its new mortgage bonds (1935 bonds) in the aggregate principal amount of $2,359,500 dated November 1, 1935, maturing twenty-five years after date and secured by the mortgage indenture; and issued and de-

livered to voting trustees shares of its common stock. The voting trustees issued and delivered to the Trust Company of Chicago 23,595 trust certificates evidencing the stock, which voting trust was subsequently terminated on or about October 31, 1945.

In accordance with the provisions of the 1935 indenture, Randolph-Wells directed the Trust Company of Chicago on or about November 26, 1935, to authenticate and deliver 1935 bonds in exchange for the surrender of 1927 bonds or certificates of deposit.

A final decree in proceeding No. 7034 was entered on April 20, 1936. There was no provision made in the No. 7034 proceeding limiting the time within which the holders of the 1927 bonds or certificates of deposit would be entitled to exchange their 1927 bonds or certificates for 1935 bonds and voting trust certificates or shares of stock.

By July 9, 1937, Randolph-Wells was in default on the 1935 bonds and commenced this proceeding (Bankruptcy No. 7464) under Section 77B of the Bankruptcy Act.

On May 2, 1939, this Court entered an order approving the plan of reorganization pursuant to which the 1935 bonds were subordinated to a new first mortgage and converted the 1935 bonds from fixed interest bearing bonds to cumulative income bonds.

Paragraphs I(a) and (b) of the order, approving the documents and directing steps in consummation of the plan as amended, provide as follows:

"I. The Trust Company of Chicago, as Trustee under that certain Indenture of Mortgage dated November 1, 1935, recorded in the office of the Recorder of Deeds of Cook County, Illinois, as document number 11736477, after the execution, delivery and recordation of the Supplemental Indenture substantially in the form attached as Exhibit 5 to said Petition and Report, and upon being advised by the Debtor or its counsel that it is appropriate to proceed with the performance of the matters and things hereinafter stated,

"(a) is hereby authorized and directed to detach and cancel or cause to be detached and cancelled all interest coupons appertaining to any and all Mortgage Bonds dated November 1, 1935, which may then or at any time thereafter be in its possession, and also to impose or cause to be imposed on all such Mortgage Bonds the form of legend attached as Exhibit 7 to the said Petition and Report of the Debtor;

"(b) is hereby authorized and directed to continue, currently as and when it receives First Mortgage 6 Per Cent Twenty Year Sinking Fund Gold Bonds of City State Safe Deposit Company dated February 1, 1927 (hereinafter referred to as 'old bonds') accompanied by all interest coupons appertaining thereto maturing on and after August 1, 1930, and/or certificates of deposit issued by Delos G. Smith, F. T. Rockwood, Galen V. Knight and C. W. Green, as the Bondholders' Committee constituted and acting under Bondholders' Protective Agreement dated July 19, 1930, evidencing the deposit with the Depositary and successor Depositary for said Committee of said old bonds, likewise accompanied by all appertaining interest coupons maturing on and after August 1, 1930, to authenticate, issue, register in the names of and deliver to the persons or entities surrendering such old bonds or such certificates of deposit to it, Mortgage Bonds in principal amounts equal to said old bonds so surrendered to it and/or said old bonds evidenced by said certificates of deposit so surrendered to it; provided, however, that all such Mortgage Bonds of the Debtor so authenticated, issued and registered and delivered by the Trust Company of Chicago from and after the date of the execution, delivery and recordation of said Supplemental Indentures hereinabove provided for,

shall have detached therefrom all interest coupons and shall have imposed thereon the form of legend attached to the Petition and Report of the Debtor as Exhibit 7."

A final decree in this proceeding was entered on June 15, 1939, which ordered and directed the Trust Company of Chicago to carry out each of the directions, powers and authority provided for in paragraphs I(a) and (b) above. No provision was made in this proceeding limiting the time within which the holders of the 1927 bonds or certificates of deposit would be entitled to exchange such bonds or certificates.

On March 10, 1950, the Trust Company of Chicago resigned as trustee under the 1935 indenture and the supplemental indenture, and on March 15, 1950, LaSalle National Bank (hereinafter referred to as "LaSalle") was designated and appointed by Randolph-Wells as successor trustee under the indentures. Randolph-Wells caused to be delivered to LaSalle the records relating to the authentication, issuance and delivery of the 1935 bonds.

At the time of LaSalle's appointment as successor trustee, $2,298,000 in aggregate principal amount of the 1935 bonds had been authenticated and were outstanding as were also 22,980 shares of stock. Randolph-Wells also caused to be delivered to LaSalle $61,500 in aggregate principal amount of 1935 bonds which were not authenticated and had not been delivered to the bondholders. Subsequently, 1927 bonds or certificates of deposit were presented to LaSalle and were exchanged for authenticated 1935 bonds together with 135 shares of stock.

On November 1, 1960, with the consent of holders of approximately $2,000,-000 in aggregate principal amount of the 1935 bonds, Randolph-Wells consummated a voluntary reorganization. To effect this reorganization it was necessary to obtain the release of the 1935 indenture and the supplemental indenture. Upon LaSalle's refusal to release the indentures unless it received a sum of money

sufficient to satisfy completely the claims of all of the holders of the 1935 bonds who had not consented and of all the 1935 bonds to which the holders of unsurrendered 1927 bonds or certificates would be entitled upon surrender of the bonds or certificates, a sufficient sum of money was paid over and LaSalle released the indentures. This sum, including aggregate principal amount plus earned interest to November 1, 1960, was $95,991.84.

LaSalle asserts that it is unable to determine its liability or obligation to holders of the 1927 bonds or certificates of deposit by reason of its becoming successor trustee to the Trust Company of Chicago or by reason of the orders of this Court in the proceedings numbered 7034 and 7464.

The petitioner prays that Cause No. 7464 be reopened and a barring date fixed prior to which holders of the 1927 bonds or certificates may surrender their bonds or certificates of deposit and further asks that the status of LaSalle be determined.

The first question to determine is whether or not this Court has jurisdiction to reopen this proceeding for the purpose of granting the relief prayed.

Title 11 U.S.C.A. Section 676, subsection c(2) provides:

"If the petition in such proceedings was approved more than three months before the effective date of this amendatory Act, the provisions of this chapter shall apply to such proceedings to the extent that the judge shall deem their application practicable."

■ Title 11 U.S.C.A. Section 1 et seq., the Chandler Act, applies since this proceeding was pending on September 22, 1938, the effective date of the Act. The final decree was not entered until June 15, 1939.

■ Under the Chandler Act the Court has broad discretion to reopen a bankruptcy proceeding. In re United

Brick & Tile Co., D.C.D.Del.1950, 94 F. Supp. 269, 272.

Although jurisdiction was reserved in the United Brick & Tile case, the Court there said:

"As stated, there can be no question but that under the Chandler Act the court has broad discretion to reopen a bankruptcy proceeding. Therefore, it appears the statutory authority alone is sufficient to empower the court to reopen the present proceedings. Even in the absence of statutory authority, it has been suggested that a bankruptcy court may reopen proceedings for the purpose of fixing a cut-off date where the same merely calls for an administrative change in the plan. In re City Stores Company, D.C. Del., 94 F.Supp. 266. The purpose of the requirement of a final cut-off date, which has the effect of closing an estate, is to relieve the bankrupt enterprise from the consequences and liabilities of its past; and also to take it from without the tutelage of the court. In the case at bar, the company is saddled with a contingent liability as to the unexchanged bonds; all this has nothing to do with its present business; it is a vestigial remnant of the old reorganization. In short, the estate has not been closed. With the entry of a cut-off order it will, in effect, be closed. Thus, the court, in the exercise of its discretion, in cases of this nature, reopens the estate in order to direct an administrative change in the plan in order that it may, in turn, effectively close the estate. And thus, it finally accomplishes the manifest purpose of the Bankruptcy Act."

Since the Chandler Act applies, it is sufficient authority to authorize the court to reopen the present proceeding regardless of the fact that there was no specific retention of jurisdiction in the 1939 decree.

In approving the plan of reorganization in the 1939 proceeding, it was not the intention of the parties or of the court that the 1927 bondholders were to be permitted to hold their certificates in perpetuity.

The continued failure of the 1927 bondholders to exchange their bonds causes disruption in the plan of reorganization authorized by this Court and creates an indefinite contingent liability that defeats one of the purposes of the plan, namely, to reorganize the capital structure for the proper carrying on of the affairs of the corporation and the proper protection of the remaining security-holders.

Until the effective reorganization has been consummated under the 1939 decree, which includes the exchange of the 1927 bonds for the offerings under the 1939 decree, there can be no effective termination of the reorganization in accordance with the 1939 decree, and, unless and until there is, the 1939 decree can and must be considered only as an ambulatory decree, whereunder the estate cannot be closed until the orders set out in the decree have been carried out. The orders set out in the 1939 decree cannot be successfully carried out unless and until all of the 1927 security-holders have either voluntarily exchanged their securities for the ones offered under that decree or, absent such a voluntary exchange, on compulsion order entered by this Court in the form of a cut-off date after the giving of reasonable and proper notice.

The 1927 bondholders have had upward of twenty-five years within which to exchange their bonds; and there are no inequities in requiring these bondholders to present their bonds on or before a cut-off date (to be fixed by the Court) or be forever thereafter barred.

In the present situation there can be no doubt but that the court may and should exercise its discretion to reopen these proceedings in order to carry out the purposes of the Bankruptcy Act.

Next must be considered the duties, rights and obligation of LaSalle as successor trustee.

Section 198 of the Bankruptcy Act, Title 11, Section 598, provides as follows:

"An indenture trustee may file claims for all holders, known or unknown, of securities issued pursuant to the instrument under which he is trustee, who have not filed claims: * * * "

Under the provisions of the Bankruptcy Act, LaSalle, as indenture trustee, has the authority to file a claim for the holders who have not as yet exchanged the old for the new bonds. The equitable owners of the bonds which have not as yet been delivered to the persons entitled thereto are unknown holders. The indenture trustee has the power to put in a claim for those persons whom he represented, providing only that they were holders pursuant to the trust indenture.

Exhibit 5 to the petition and report of the debtor with respect to the proposed amendment to the plan of reorganization in Bankruptcy 7464 is a supplemental indenture entered into pursuant to the provisions of the reorganization plan in the 1939 reorganization proceedings. This indenture names the Trust Company of Chicago as trustee. Section 7 thereof defines the term "trustee" as follows:

"The term 'Trustee' as used in said Mortgage Bonds, in the Original Indenture and in this Supplemental Indenture from and after the date hereof shall be deemed to mean and refer not only to the Trust Company of Chicago as the present Trustee under the Original Indenture, but also each and every successor Trustee hereafter appointed under the Original Indenture in accordance with its terms."

Thus, it would appear that LaSalle having accepted the appointment as successor trustee in the reorganization proceedings is charged with carrying out the duties of its predecessor as outlined in the reorganization proceedings. At the time the trust indenture was entered into by the debtor and the indenture trustee, the contracting parties and the court contemplated that the indenture trustee should represent all of the bondholders. The fiduciary relationship between trustee and cestui implies the right of representation so that the trustee had implied authority to file claims. In re Kenilworth Building Corp., 7 Cir., 105 F.2d 673.

It is eminently clear that LaSalle, as trustee, has the power to represent all of the bondholders. It is also clear that LaSalle, as trustee, has a duty to the bondholders so long as it remains trustee and should represent the unknown owners for so long as these unknown owners have a valid claim which may be asserted by the presentation of the 1927 bonds for exchange or until such time as these bonds may validly be presented for exchange.

If at the hearing in this cause a barring or cut-off date is set, then LaSalle, as trustee, should pay over to the holders of the 1927 bonds or certificates of deposit the amount to which they are entitled if and when they are presented prior to such barring or cut-off date.

The Court finds that the sum now held by LaSalle is held by it for the use and benefit of the holders of the 1927 bonds or certificates of deposit and, as trustee, for the holders of such bonds or certificates.

The fixing or non-fixing of a barring or cut-off date will be determined at the hearing which has been set for the 6th day of September, 1961.

It is, therefore, the order of this Court that Bankruptcy Proceeding No. 7464 be and the same is hereby reopened for further proceedings.