In Proceedings for the Reorganization of **RANDOLPH–WELLS BUILDING CORPORATION, Debtor.**

No. 7464.

United States District Court
E. D. Illinois.

March 29, 1963.

See also 197 F.Supp. 327.

**850**

---

Francis B. Stine, Chicago, Ill., and John H. Haley, Jr., St. Louis, Ill., for petitioners, Brown, Stine & Cook, Chicago, Ill., of counsel.

John C. Roberts, of Costello, Wiechert, Roberts & Gundlach, East St. Louis, Ill., and Edwin A. Rothschild and Ronald L. Boorstein, of Sonnenschein, Lautmann, Levinson, Rieser, Carlin & Nath, Chicago, Ill., for Randolph-Wells Building Corp., debtor.

Wayne P. Williams, East St. Louis, Ill.; Walker & Williams, East St. Louis, Ill., of counsel, and Frank H. Uriell and William A. Carey, Chicago, Ill.; Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., of counsel, for La-Salle National Bank.

Thomas C. Walsh, Lansing, Mich., for P. J. Dunn and Herbert M. Slauson, disappeared or missing persons.

JUERGENS, District Judge.

In this corporate reorganization proceedings Randolph-Wells Building Corporation (hereinafter referred to as "Randolph-Wells") on March 27, 1961 filed its amended petition asking that bankruptcy proceedings No. 7464 be reopened for the purpose of limiting the time within which bonds of the City State Safe Deposit Company might be exchanged for securities of Randolph-Wells (hereinafter referred to as "1935 Bonds"). The petitioner, Randolph-Wells, is the corporate successor to City State Safe Deposit Company, an Illinois corporation (hereinafter referred to as "City State").

On February 1, 1927 City State issued its First Mortgage 6 Per Cent Twenty-Year Sinking Fund Gold Bonds (hereinafter referred to as "1927 Bonds") in the aggregate principal amount of $2,359,500.00. The 1927 bonds were defaulted and on June 19, 1930 the holders thereof entered into a Bondholders' Protective Agreement, whereby they were to deposit their bonds with the Trust Company of Chicago, as depositary, and to receive certificates of deposit in exchange for their bonds.

City State, however, again ran into financial difficulties, and on February 6, 1935 a proceeding, entitled "In the Matter of City State Safe Deposit Company, No. 7034," was filed in this Court to reorganize City State under the provisions of Section 77B of the Bankruptcy Act. A reorganization plan was submitted and approved on July 8, 1935 in proceeding No. 7034, and Randolph-Wells was organized as the corporate successor of City State.

On November 14, 1935 an order was entered in proceeding No. 7034 which provided, among other things, that the new corporation, Randolph-Wells, upon receiving the conveyance of the debtor's property from the trustees be authorized and directed to execute its new mortgage bonds, issuable to the holders of the 1927 bonds in the amount of $2,359,500.00, to the Trust Company of Chicago for distribution to the holders of the old first mortgage bonds of City State, and to execute, accept and deliver to the Trust Company of Chicago, as trustee, its new indenture of mortgage and that the Trust Company of Chicago be authorized upon receipt of delivery of the 1935 bonds to authenticate the same and distribute the bonds and voting trust certificates deposited with it by the trustees to the holders of the 1927 bonds in the following manner:

(a) New bonds of the corporation to be distributed in the same principal amount as the principal amount of the old first mortgage bonds presented by the holders and

(b) Voting trust certificates evidencing common stock of the new corporation to be distributed in proportion of one share of such stock

for each $100.00 principal amount of the old first mortgage bonds presented; such distribution to be made upon presentation and surrender by the holders of the 1927 bonds, accompanied by all unpaid interest coupons appertaining thereto, or upon presentation of certificates of deposit evidencing the deposit of the bonds and coupons under the terms of the Bondholders' Protective Agreement dated July 19, 1930.

Randolph-Wells executed and delivered to the Trust Company of Chicago an indenture of mortgage dated November 1, 1935; executed and delivered to the Trust Company of Chicago its new mortgage bonds (1935 bonds) in the amount of $2,359,500.00, dated November 1, 1935 and maturing twenty-five years after date and secured by the mortgage indenture; and issued and delivered to voting trustees shares of its common stock. Randolph-Wells, in accordance with the provisions of the 1935 indenture, directed the Trust Company of Chicago on or about November 26, 1935 to authenticate and deliver 1935 bonds in exchange for the 1927 bonds or certificates of deposit.

A final decree was entered in proceeding No. 7034 on April 20, 1936. There was no provision made in the proceeding limiting the time within which the holders of the 1927 bonds or certificates of deposit would be entitled to exchange their 1927 bonds or certificates for 1935 bonds and voting trust certificates or shares of stock.

Randolph-Wells by July 9, 1937 found itself in financial difficulty and was in default on the 1935 bonds; whereupon, this proceeding (Bankruptcy No. 7464) was commenced under Section 77B of the Bankruptcy Act.

This Court on May 2, 1939 entered an order approving the plan of reorganization pursuant to which the 1935 bonds were subordinated to a new first mortgage and converted the 1935 bonds from fixed interest bearing bonds to cumulative income bonds.

A final decree in the proceeding was entered on June 15, 1939, which ordered and directed the Trust Company of Chicago to carry out each of the directions, powers and authority provided in the reorganization proceedings. No provision was made limiting the time within which the holders of the 1927 bonds or certificates of deposit would be entitled to exchange such bonds or certificates.

On March 10, 1950 the Trust Company of Chicago resigned as trustee under the 1935 indenture and the supplemental indenture, and LaSalle National Bank (hereinafter referred to as "LaSalle") was designated and appointed by Randolph-Wells as successor trustee under the indentures on March 15, 1950. The records relating to authentication, issuance and delivery of the 1935 bonds were caused to be delivered to LaSalle by Randolph-Wells.

At the time of LaSalle's appointment as successor trustee, $2,298,000.00 in aggregate principal amount of the 1935 bonds had been authenticated and were outstanding as were also 22,980 shares of stock. Randolph-Wells also caused to be delivered to LaSalle $61,500.00 in aggregate principal amount of 1935 bonds which were not authenticated and had not been delivered to the bondholders. Subsequently, 1927 bonds or certificates of deposit were presented to LaSalle and were exchanged for authenticated 1935 bonds together with 135 shares of stock.

With the consent of the holders of approximately $2,000,000.00 in aggregate principal amount of the 1935 bonds, Randolph-Wells on November 1, 1960 consummated a voluntary reorganization. To effect this reorganization it was necessary to obtain the release of the 1935 indenture and the supplemental indenture. LaSalle, however, refused to release the indentures unless it received a sum of money sufficient to satisfy completely the claims of all the holders of the 1935 bonds who had not consented and of all the 1935 bonds to which the holders of unsurrendered 1927 bonds or certificates would be entitled upon sur-

render of the bonds or certificates. A sufficient sum of money was paid over and LaSalle released the indentures. The sum, including aggregate principal amount plus earned interest to November 1, 1960, was $95,991.84.

By its amended petition of March 27, 1961, Randolph-Wells sought to have Cause No. 7464 reopened and a bar date fixed prior to which holders of the 1927 bonds or certificates might surrender their bonds or certificates of deposit and further asked the Court to determine the status of LaSalle since LaSalle asserted it was unable to determine its liability or obligation to the holders of the 1927 bonds or certificates of deposit by reason of its becoming successor trustee to the Trust Company of Chicago or by reason of the orders of this Court in proceedings Nos. 7034 and 7464.

On July 17, 1961 this Court entered its order setting the cause down for hearing on September 6, 1961 and caused to be prepared a notice of the proceedings as follows:

> "Costello, Wiechert, Roberts & Gundlach, Attorneys,
> "First National Bank Building,
> "East St. Louis, Illinois
> "Bridge 1–2464
> "Sonnenschein Lautmann Levinson Rieser Carlin & Nath
> "77 W. Washington Street
> "Chicago, Illinois
> "ANdover 3–6400

"In the United States District Court for the Eastern District of Illinois. In the Matter of RANDOLPH-WELLS BUILDING CORPORATION, Debtor, No. 7464.

"Notice is hereby given to the holders of City State Safe Deposit Company First Mortgage 6 Per Cent Twenty Year Sinking Fund Gold Bonds dated February 1, 1927, and certificates of deposit evidencing the deposit of such bonds with The Trust Company of Chicago, as depositary under the Bondholders' Protective Agreement of June 19, 1930, that a petition has been filed by RANDOLPH-WELLS BUILDING CORPORATION, Debtor, in the United States District Court for the Eastern District of Illinois, to secure an order limiting the time within which City State Safe Deposit Company First Mortgage 6 Per Cent Twenty Year Sinking Fund Gold Bonds dated February 1, 1927, and certificates of deposit evidencing the deposit of such bonds with The Trust Company of Chicago, as depositary under the Bondholders' Protective Agreement of June 19, 1930, may be exchanged for RANDOLPH-WELLS BUILDING CORPORATION stock and first mortgage bonds dated November 1, 1935.

"Notice is further given that a hearing on said petition will be held in the United States District Court for the Eastern District of Illinois at East St. Louis, Illinois, on September 6, 1961, at the hour of 9:30 A.M., at which time and place you are notified to appear if you so desire."

The debtor was ordered to cause the foregoing notice to be published in the Chicago Daily Law Bulletin in Chicago, Illinois (a newspaper of general circulation in the vicinity of the bankrupt corporation), and in The Journal in East St. Louis, Illinois (a newspaper of general circulation at the seat of the Court), for three successive weeks, commencing no later than July 30, 1961, and further to be sent by registered mail, deposited in the United States mail no later than August 7, 1961, to the last known address of each of the registered owners of the outstanding 1927 City State Safe Deposit Company First Mortgage 6 Per Cent Twenty-Year Sinking Fund Gold Bonds.

The Court's memorandum, setting forth the reasons for its order, appears in D.C., 197 F.Supp. 327.

The hearing was held on September 6, 1961. The publications required in the Court's order had been effected and no-

tices had been mailed by registered mail as required.

The Court entered a bar order fixing a date of exchange of no later than March 5, 1962.

On April 25, 1962 Ethel M. Boese et al. filed their petition to vacate the order of September 6, 1961, or, in the alternative, to extend the bar date for surrender of unexchanged City State Safe Deposit Company certificates of deposit, and on July 19, 1962 filed an amendment and supplement to the petition filed on April 25, 1962.

By their petition and supplement, the petitioners seek to have this Court vacate or extend the bar date heretofore fixed in order to permit them to exchange their securities, asserting, inter alia, that the Court was without jurisdiction to enter the bar. This contention will not further be considered since it was dealt with at length in this Court's previous memorandum and the reasons for its action were fully set out therein.

Petitioners further assert that LaSalle made no effort to locate the owners of the unexchanged certificates of deposit or to bring up to date the records, made in the year 1930, of Randolph-Wells as to the names and addresses of the owners of unexchanged certificates of deposit; that LaSalle, the only party appearing in opposition to the petition to fix a bar date, was under the dominion of Randolph-Wells; that the notice of the hearing in this Court on September 6, 1961 is not understandable to a lay person and did not inform the holders of certificates of deposit that they could receive money for their bonds, including interest, by simply surrendering their certificates to the LaSalle Bank; that the published legal notice was inadequate to notify the certificate holders; that the notice sent by registered mail to the holders of the certificates of deposit was not adequate for the reason that such notice failed to reach the certificate holders and that those it did reach were unable to understand the import of the notice; that the United States Securities and Exchange Commission in mid-February, 1962, distributed a publication showing a bar date different from that fixed by the Court in that the Commission stated erroneously that the bar date was May 5, 1962 rather than March 5, 1962; that Randolph-Wells withheld disclosure to the Commission that the bar date was March 5, 1962 and further furnished the Commission with erroneous information to excuse Randolph-Wells from hiring searchers to locate missing certificate holders; that William B. Greene of American Equities Group, Inc., offered to locate missing holders for the LaSalle Bank without charge to it; that the offer was refused by LaSalle; that a like offer was made to Randolph-Wells, who also declined and refused to tell Greene of the location of the Court in which Randolph-Wells was reorganized and declined to cooperate with Greene. The petitioners assert that the failures on the part of Randolph-Wells and LaSalle were gross breaches of duty to petitioners and others similarly situated and charge that both Randolph-Wells and LaSalle were guilty of gross fraud and consummate bad faith and further assert that this Court had no statutory or other authority, nor did it have jurisdiction, to discharge LaSalle from its fiduciary obligation to petitioners.

On July 26 and 27, 1962 a hearing was had on the petition to vacate the order of September 6, 1961, or, in the alternative, to extend the bar date for surrender of unexchanged City State Safe Deposit Company certificates of deposit.

At the hearing it developed that at the time the Court set the bar date and entered its bar order there were thirty-nine holders of certificates of deposit and one bondholder (the name and address of the bondholder was unknown). It was affirmatively shown that the notice required by the Court had been published in accordance with its order and that a copy of the notice had been mailed by registered mail to each of the holders of the certificates of deposit at the last known address as shown by the list of holders of certificates of deposit of City State Safe Deposit Company. Of the thirty-

nine registered letters mailed, seventeen were actually received; the remaining twenty-two were returned by the Postal Department.

Between August 30, 1961 and February 15, 1962, five certificate holders appear to have surrendered their certificates as shown by Recap of Unissued Bond Account of Randolph-Wells Building Corporation. On March 6, 1962, $74,957.69 was surrendered to Randolph-Wells Building Corporation, being the balance due the corporation pursuant to the bar order effective as of March 5, 1962, less expenses incurred.

It was also shown that in addition to the publication and the mailing of the notice as directed by the Court, a copy of this Court's order of September 6, 1961 was mailed on September 8, 1961 to the last known address of each of the thirty-nine certificate holders as shown by the list of holders of certificates of deposit of City State Safe Deposit Company. Of this number sixteen were received; the rest were undelivered.

The petitioners' contention that Randolph-Wells and LaSalle were guilty of fraud or misconduct in giving the notice required by the Court order was not supported by any evidence.

The petitioners assert that the notice required by the Court was deficient in the following respects:.

1. That although there was only one bondholder involved and a number of certificate holders, yet the notice required listed the bonds ahead of the certificates of deposit and emphasized bonds rather than certificates;

2. That the notice listed the Trust Company of Chicago as depositary under the Bondholders' Protective Agreement, whereas, in fact the Chicago Trust Company was depositary under the agreement;

3. That the notice showed the Protective Agreement to be dated June 19, 1930, whereas, in fact the Protective Agreement was dated July 19, 1930;

4. That the notice failed to show the certificate holders that they were entitled to exchange their certificates for money.

The Court is unable to see wherein the first deficiency noted, namely, that the notice refers first to the bondholders rather than the certificate holders, is defective. The wording of the notice in this respect is entirely in accord with the wording throughout the entire proceedings in that the bondholders and certificate of deposit holders appear in that order, which appears to the Court to be the proper method of listing the securities, i. e., in the order of their issuance.

While it is true that the notice does in fact show the Trust Company of Chicago as the depositary under the Bondholders' Protective Agreement of June 19, 1930, rather than the Chicago Trust Company as depositary under the Bondholders' Protective Agreement of July 19, 1930, the Court does not believe that a person would be misled by the notice since a perusal of the remainder of the notice makes clear the securities concerned.

The petitioners' assertion that the failure of the notice to show that the bonds and certificates might be surrendered for cash rather than the right of exchange as shown in the notice was misleading, is without merit. The notice clearly shows that some action on the part of the holders of the securities should be taken since a hearing was being held upon a petition to secure an order limiting the time within which exchanges could be made. In any event, this deficiency, if it is a deficiency, was remedied by the September 8, 1961 mailing of this Court's order dated September 6, 1961, wherein it was clearly pointed out that the securities might be surrendered for cash and stock of Randolph-Wells.

The petitioners make much ado about the fact that the return address shown on the registered receipts should have been noted by LaSalle and its records changed to note changed names and ad-

dresses. The Court does not believe that it was the duty of the trustee to examine each of the numerous return receipts it received as a result of the mailing to determine any discrepancies that might appear.

One of the certificate holders says she received notice of the Court hearing but she was unable to understand it and awaited further instructions subsequent to the Court hearing, which was scheduled for September 6, 1961. This person failed to receive the Court order. It must be noted that the Court order sent to this certificate holder was mailed to the same person, addressed to the same address as the notice. The Court finds that the owner of the certificate of deposit, when she received the notice, should have noted that her name had been changed by marriage and that her address had been changed from that shown on the letter. She did nothing to notify LaSalle or Randolph-Wells of this change of name or change of address. She should not now be heard to complain that LaSalle or Randolph-Wells was negligent and breached their duty while she remained idle and did nothing to correct a situation which she knew to be erroneous. She was the negligent party.

One of the certificate holders by deposition stated he had received the notice but that he did not understand its meaning, thought it was of no value and did nothing to protect his interests prior to the bar date.

Of the seventeen who first received notice, only five took it upon themselves to surrender their securities before the bar date. The rest took no action.

Section 1.09 of the Bondholders' Protective Agreement provides as follows:

"§ 1.09. Before issuing any certificate the Depositary may require a Depositor to furnish to it in writing his post-office address. Such address or any change therein, written notice of which is given by the Depositor to the Depositary prior to the mailing or sending of any notice or any other document or the dis-tribution of any securities, shall be conclusively deemed the correct mailing address of such Depositor for the mailing or sending of such notice, document, or securities. Certificates of deposit, stock certificates, bonds, notes, checks and any other securities which at any time may be issuable or distributable to the Depositor may be mailed to him by the Depositary or the Committee at his address appearing on the books of the Depositary, but such mailing shall be at the Depositor's risk."

Thus there is placed on the depositors a duty to supply, firstly, their correct mailing address and, secondly, the duty to notify the depositary of any change in that address. The original list consisted of in excess of ninety pages and contained the names and addresses of about fifteen hundred holders of certificates of deposit. Considering the long and bumpy trail of this reorganized corporation and its shaky predecessor, the various trustees appear to have accomplished a monumental task since over ninety-eight per cent of the original holders of the City State securities have exchanged their securities for Randolph-Wells securities. Of about fifteen hundred original holders, all but thirty-nine had acted to perfect their interest prior to the application to this Court for a bar date. Subsequently, five additional holders have perfected their rights. Twelve failed to act after receiving notice and twenty-two of the original fifteen hundred appear to have failed to receive actual notice, but these received constructive notice through publication.

In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865, the United States Supreme Court had the following to say:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their ob-

jections. (Cases cited). The notice must be of such nature as reasonably to convey the required information, * * *, and it must afford a reasonable time for those interested to make their appearance, (Cases cited). But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. * * * "

The Court further said:

"This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, emloyment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. (Cases cited).

"Those beneficiaries represented by appellant whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient. * * * "

In the instant case both the debtor (by following the Court order in giving the required notice) and LaSalle (by mailing notices of this Court's order, establishing the bar date, to the addresses shown on the list supplied to them by their predecessor, who in turn had received them from the depositors themselves) have in effect acted with due diligence in giving the required notice.

The petitioners assert that the failure of LaSalle and Randolph-Wells to utilize the service of a searcher was erroneous. According to the testimony, William B. Greene, representing American Equities Group, Inc., in the business of locating missing persons, first offered to locate the missing persons for LaSalle for a fee and subsequently asserted he would do so without charging LaSalle a fee. LaSalle declined to utilize his services and referred him to Randolph-Wells. Randolph-Wells asked if he represented any of the certificate holders and, upon finding that he did not, declined to utilize his services or to supply him with a list of the missing certificate holders. The Court does not believe that it was the legal or moral duty of either LaSalle or Randolph-Wells to retain Greene to find the missing persons. Certainly they were not authorized to do so by court order. Nor does the Court believe it was the duty of either LaSalle or Randolph-Wells to turn over to Greene a list of the missing certificate holders. Such action certainly does not establish fraud or deceit or breach of duty on the part of either LaSalle or Randolph-Wells. Greene testified that on either February 23 or February 26, 1962 he had contacted LaSalle with a view to representing them or the owners of the certificates of deposit in locating the missing certificate holders. He further testified that prior to March 6, 1962 (March 5, 1962 was cut-off date fixed by the Court) he had no power of attorney to represent any of the City State bondholders or certificate holders.

The petitioners also make much ado about the fact that the United States Securities and Exchange Commission sent out a publication showing a cut-off date of May 5, 1962, rather than on March 5, 1962, as set by the Court. There was no testimony or evidence whatsoever to show that this publication in any way misled any of the holders of securities involved. There was no evidence to show that any of the certificate holders had even seen or heard of the publication prior to the cut-off date fixed by the Court.

While the original order reopened the proceedings in order to fix a bar date, such action was not a change or modification of a plan but was merely an administrative matter aiding in effectuating the purpose of the plan and, as found in its previous order and as pointed out in its memorandum, this Court clearly had jurisdiction to do so. There are currently, however, different considerations involved. The question here is whether the

bar order once entered can be extended. Once a bar order has been set and the bar date has passed, the Court has no jurisdiction to extend the bar date or to permit an exchange of securities after the time for making such an exchange has expired. Although a court may re-open proceedings to enter a bar order, yet once that order is entered it cannot be extended after the bar date has passed. In re City Stores Co., 1950, D.C., 94 F.Supp. 266. Detroit Harbor Terminals v. Kuschinski, 6 Cir., 1950, 181 F.2d 541.

The Court finds that the petition to vacate the order of September 6, 1961, or, in the alternative, to extend the bar date for surrender of unexchanged City State Safe Deposit Company certificates of deposit and the amendment and supplement thereto should be dismissed.

Parties to settle the order.