In the Matter of **RANDOLPH-WELLS BUILDING CORPORATION,** Debtor.

**Ethel M. BOESE et al., Petitioners-Appellants,**

v.

**RANDOLPH-WELLS BUILDING CORPORATION and LaSalle National Bank, Respondents-Appellees.**

No. 14261.

United States Court of Appeals Seventh Circuit.

May 15, 1964.

Rehearing Denied July 16, 1964.

Francis B. Stine, Chicago, Ill., John H. Haley, Jr., E. St. Louis, Ill., for petitioners appellants. Brown, Stine & Cook, Chicago, Ill., of counsel.

Edwin A. Rothschild, William A. Carey, Ronald L. Boorstein, Chicago, Ill., John C. Roberts, East St. Louis, Ill., for Randolph-Wells Building Corp., appellee. Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., and Roberts, Gundlach, Lee & Stubbs, East St. Louis, Ill., of counsel.

Frank H. Uriell, Chicago, Ill., for respondent, LaSalle National Bank. Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., Chicago, Ill., of counsel.

Before DUFFY, SWYGERT and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Appellants (petitioners), are twenty-four individuals who are the original owners, or own or have an ownership interest through inheritance or devise from original owners, of certificates of deposit representing first mortgage bonds issued in 1927, by City State Safe Deposit Company, an Illinois corporation (City State).

The present debtor, Randolph-Wells Building Corporation (Randolph-Wells) is the corporate successor to City State and came into being as the result of the latter's reorganization under Section 77B of the Bankruptcy Act in 1935–1936 (No. 7034). Randolph-Wells in turn was reorganized under Section 77B in proceedings commenced in 1937 and concluded in 1939 (No. 7464). The LaSalle National Bank (LaSalle) was the successor indenture trustee for the 1935 bonds of Randolph-Wells which, under both reorganization plans, were exchangeable, together with common stock of Randolph-Wells, for the old City State first mortgage securities, including those now claimed or owned by petitioners. The final decrees closing the estate in the two reorganization proceedings did not provide any time limit within which the old City State securities could be exchanged for the 1935 securities and common stock of Randolph-Wells.

In November 1960, Randolph-Wells effected a voluntary reorganization, as a part of which it at LaSalle's request deposited with it approximately $96,000, to pay principal and interest then owing and due on its 1935 bonds which petitioners and other holders of the old City State securities were entitled to receive, together with common stock then lodged with LaSalle, in exchange for their old securities under the reorganization plans.

In February 1961, Randolph-Wells petitioned the District Court to reopen its 1937–1939 reorganization for the purpose of having the Court fix a bar or cut-off date for the exchange of the old 1927 securities of City State for the 1935 securities and stock of Randolph-Wells. LaSalle was made a party to this proceeding, and in answer to the petition alleged that the proceeding in No. 7464 was terminated by a final decree in 1939, that the plan of reorganization had been completely effectuated and, therefore, the Court was without jurisdiction or authority to grant the relief sought by Randolph-Wells.

The District Court (Judge Juergens) in a written opinion decided this issue adversely to LaSalle and ordered a hearing on the petition of Randolph-Wells to have a bar or cut-off date filed. In Re Randolph-Wells Building Corporation, Debtor, D.C.Ill., 197 F.Supp. 327. In this opinion, the Court stated (197 F. Supp. page 332):

"It is eminently clear that LaSalle, as trustee, has the power to

represent all of the bondholders. It is also clear that LaSalle, as trustee, has a duty to the bondholders so long as it remains trustee and should represent the unknown owners for so long as these unknown owners have a valid claim which may be asserted by the presentation of the 1927 bonds for exchange or until such time as these bonds may validly be presented for exchange."

After a rather extended hearing, the Court, on September 6, 1961, entered an order setting a bar or cut-off date of March 6, 1962. Notice of the pendency of this proceeding was given by publication and by sending a copy of the publication notice to the holders of the old City State securities by registered mail to their last known addresses. Upon the entry of the bar order, LaSalle also mailed out copies of this order to such holders at their last known addresses. Five holders surrendered their City State certificates prior to the bar date and received from LaSalle payments aggregating $14,998.71, as well as shares of Randolph-Wells. The remaining certificate holders, including petitioners and those whom they claim to represent, neither surrendered their securities nor took any steps to redeem them until after the expiration of the bar date.

Thereupon, petitioners, on April 25, 1962, initiated the current proceedings to vacate the Court order of September 6, 1961, fixing the bar or cut-off date of March 6, 1962. Petitioners prayed in the alternative that the Court extend the bar date to give City State security holders who had not done so an opportunity to realize on their securities. In this proceeding, Randolph-Wells and LaSalle were named respondents.

Petitioners sought to vacate the bar order on the grounds (1) that notice of the proceedings by publication and mailing failed to satisfy the requirements of due process; (2) that Randolph-Wells, aided by LaSalle, committed a fraud upon City State security holders, including petitioners, which vitiated the pro-

ceedings; (3) that substantial mistakes made in the bar proceeding required its reopening, and (4) that there was a lack of jurisdiction to reopen the proceedings because there had been a complete effectuation of the plan of reorganization (the Court, as heretofore noted, had decided this issue in favor of Randolph-Wells).

On April 9, 1963, the Court, after a hearing and consideration of much oral and documentary evidence, entered an order dismissing the petition to vacate its bar order of September 6, 1961, or, in the alternative, to extend the bar date established. It is from this order that the appeal comes to this Court.

In connection with its order of dismissal, the Court again filed an opinion in which is accurately detailed the evidentiary facts, its findings of fact and its reasoning, which culminated in the decision adverse to petitioners. In Re Randolph-Wells Building Corporation, D.C. Ill., 215 F.Supp. 849. We see no reason to burden this opinion by repeating the Court's statement of facts. Therefore, we adopt its opinion to and including the first two full paragraphs on page 854 of 215 F.Supp. as a part of this opinion.

In our judgment, the only serious question here is whether notice to petitioners of the pendency of the bar proceedings was sufficient to meet the standards of due process. As set forth in the statement of facts by the District Court (215 F.Supp. page 852), an order was entered by that Court July 17, 1961, setting forth in detail the manner and means to be employed by the parties in giving notice of the bar proceedings. This order was strictly complied with. Commenting thereon, Judge Juergens in his opinion stated (215 F.Supp. page 856):

"In the instant case both the debtor (by following the Court order in giving the required notice) and LaSalle (by mailing notices of this Court's order, establishing the bar date, to the addresses shown on the list supplied to them by their predecessor, who in turn had re-

ceived them from the depositors themselves) have in effect acted with due diligence in giving the required notice."

The statement, "list supplied to them by their predecessors," refers to bondholders, including petitioners, who were parties to a Bondholders' Protective Agreement entered into July 19, 1930, in which the Chicago Trust Company was designated as trustee and depositary for the bonds. Various trust companies and banks successively served as depositaries for the bonds in question, the last being LaSalle National Bank.

The protective agreement provided that certificates of deposit issued thereunder were to be registered in books kept by the depositary, that the depositors were to be parties to the agreement and bound by all the terms and conditions with the same effect as if they had personally signed the agreement and that, as to the addresses of depositors and the mailing by the depositary of notices, securities and checks, the following provision would control:

"Sec. 1.09. Before issuing any certificate the Depositary may require a Depositor to furnish to it in writing his post-office address. Such address or any change therein, written notice of which is given by the Depositor to the Depositary prior to the mailing or sending of any notice or any other document or the distribution of any securities, shall be conclusively deemed the correct mailing address of such Depositor for the mailing or sending of such notice, document, or securities. Certificates of deposit, stock certificates, bonds, notes, checks and any other securities which at any time may be issuable or distributable to the Depositor may be mailed to him by the Depositary or the Committee at his address appearing on the books of the Depositary, but such mailing shall be at the Depositor's risk."

The District Court, as to the rights and duties of the bondholders under this agreement, made the following pertinent observation (215 F.Supp. page 855):

"Thus there is placed on the depositors a duty to supply, firstly, their correct mailing address and, secondly, the duty to notify the depositary of any change in that address. The original list consisted of in excess of ninety pages and contained the names and addresses of about fifteen hundred holders of certificates of deposit. Considering the long and bumpy trail of this reorganized corporation and its shaky predecessor, the various trustees appear to have accomplished a monumental task since over ninety-eight per cent of the original holders of the City State securities have exchanged their securities for Randolph-Wells securities."

Petitioners—in fact, both sides—rely heavily upon and quote extensively from Mullane v. Central Hanover Bank & Trust Co., Trustee, et al., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, in support of their respective contentions on the issue of notice to petitioners in the bar proceedings. The Court in that case held as to some of the parties that the notice by publication was insufficient to accord due process, but we think the instant situation is distinguishable on the facts. The distinction is emphasized by the headnotes to the Mullane opinion, where it is stated:

"The statutory notice by publication is sufficient as to any beneficiaries whose interests or addresses are unknown to the trustee, since there are no other means of giving them notice which are both practicable and more effective."

On the other hand, the Court stated that such notice is not sufficient as to "known persons whose whereabouts are also known, since it is not impracticable to make serious efforts to notify them at least by ordinary mail to their addresses on record * * *." In the instant case, neither the trustee nor the debtor had any knowledge of the names or where-

abouts of owners of securities other than those shown by the register which La-Salle had received from its predecessor trustee. Moreover, not only was there notice by publication in compliance with the Court's order but, in addition, La-Salle, on September 8, 1961 (two days after the entry of the bar order), mailed a copy of this order to the last known address of each holder of an unexchanged certificate of deposit. Of the thirty-nine notices mailed, sixteen were received. Five of those receiving notice presented their certificates of deposit to LaSalle, for which they received $14,998.71. Thus, it is shown that mailing of notice, in addition to publication, conforms to the Court's suggestion in Mullane.

Petitioners argue that the registered list of certificate holders utilized by La-Salle had been in existence for some thirty years and it might have been anticipated that some, perhaps many, of the persons whose names appeared thereon were deceased, with title to their certificates passing to their heirs or other persons, and that many might have changed their addresses in the intervening years. It is also argued that respondents had actual notice of this situation from the fact that some of the mailings were returned by the postal authorities. It is urged that due diligence on the part of respondents, particularly LaSalle, would have required the employment of a professional searcher to locate those who were the owners or had an interest in the certificates in question.

■ We agree with the District Court that respondents were under no such duty or obligation. Particularly is this so in view of the Bondholders' Protective Agreement which required each certificate holder to furnish the trustee in writing with his post office address, as well as any change thereof, and that the same "shall be conclusively deemed the correct mailing address of such depositor." Of some 1500 original certificate holders, all but thirty-nine had acted to protect their interest prior to the petition to fix a bar date. It is unreasonable to conclude that

these thirty-nine certificate holders, some of whom had acquired their certificates by transfer from the original holders and were unknown to LaSalle, should be absolved of all responsibility in protecting their rights when the means to do so were at hand. It is even more unreasonable to conclude that the responsibility was on LaSalle to employ searchers to locate certificate owners, some of whose names and more of whose addresses were unknown. We agree with the finding of the District Court that the means employed by respondents constituted due diligence on their part.

■ On the issue of fraud alleged by petitioners, the District Court in its opinion stated (215 F.Supp. page 854):

"The petitioners' contention that Randolph-Wells and LaSalle were guilty of fraud or misconduct in giving the notice required by the Court order was not supported by any evidence."

With this statement we agree.

We find without merit other issues raised and discussed in the District Court. Petitioners raise an issue in this Court which was neither pleaded nor argued in the District Court, which could be ignored for that reason. Even so, we will state the issue and discuss it briefly. As already noted, Randolph-Wells in its voluntary reorganization in 1960 paid to LaSalle some $96,000, to protect LaSalle against claims of holders of outstanding securities. Prior to the bar date as fixed by the Court's decree, security holders presented their claims to LaSalle and were paid some $15,000. Thus, of the amount deposited with LaSalle by Randolph-Wells, there remained in the hands of the former on the cut-off date, as fixed by the bar order some $81,000, which the Court thereafter ordered returned to Randolph-Wells.

It is argued by petitioners that the deposit made by Randolph-Wells with La-Salle was an irrevocable appropriation, to be used by LaSalle in payment of the outstanding securities. In other words, it is asserted that Randolph-Wells by

reason of the deposit with LaSalle discharged its obligations to the security holders and lost all control of and right to the money.

Petitioners cite only Steel Cities Chemical Co. v. Virginia-Carolina Chemical Co., 2 Cir., 7 F.2d 280, in support of their contention. This case is of no aid to petitioners; in fact, by implication it supports the action of the Court in ordering the remainder of the deposit returned to Randolph-Wells. In the cited case, the receiver of a mortgagor sought return of funds which the mortgagor had deposited with a trustee for the purpose of paying creditors. The Court in denying the receiver's right to recover stated (7 F.2d page 283):

"And the indenture also expressly declared that in moneys so deposited the company making the deposit should have 'no rights or interest in any such moneys,' unless and until the holders of the bonds or coupons have failed to present them for payment within the periods stated in the indenture. And in this case no suggestion has been made that the period within which coupon holders had to present their coupons for payment had expired."

In contrast, in the instant case it was only that portion of the deposit unclaimed by creditors which was ordered returned to Randolph-Wells, after the cut-off date. We do not understand from petitioners' argument where they think the unclaimed portion of the deposit should go. Certainly it does not belong to LaSalle, the trustee, who makes no claim to it. Equally certain, it does not belong to the security holders, who made no claim prior to the cut-off date. By the process of elimination, if nothing else, the money belongs to Randolph-Wells. Petitioners' argument, if sustained, would in effect void the Court order fixing the cut-off date. In our judgment, this issue, belatedly raised by petitioners, must be rejected.

The order appealed from is

Affirmed.